**SO ORDERED: February 02, 2007.**

**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| TERINA J. DANIELS, | ) | CASE NO. 06-91205-BHL-7 |
| Debtor. | ) | |

**ORDER**

This matter comes before the Court on the **United States Trustee's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b)(2) or in the Alternative 11 U.S.C. § 707(b)(3)** filed on November 27, 2006, and the **Objection to Trustee's Motion to Dismiss** filed by the Debtor, Terina J. Daniels ["Daniels"] on December 18, 2006. The Court conducted a hearing on the foregoing matter on January 10, 2007.

The issue under section 707(b)(2) is whether the Debtor, for purposes of section 707(b)(2)(A)(ii)(I), may take the transportation ownership expense deduction specified under the Internal Revenue Service ["IRS"] Local Standards for a vehicle which she owns free and clear of liens. A separate issue is presented as to whether the case should be dismissed as an abuse under section 707(b)(3).

<u>Section 707(b)(2)</u>

Terina J. Daniels ["Daniels"] filed for relief under Chapter 7 of the United States Bankruptcy Code on August 21, 2006, bringing her within the purview of the Bankruptcy Abuse Prevention and Consumer Protection Act ["BAPCPA"]. The first issue before the Court is whether a presumption of abuse arises in this case by virtue of section 707(b)(2)(A)(I) of BAPCPA. That section, generally referred to as the means test, requires a court to "presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) and multiplied by 60 is not less than the lesser of (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater: or (II) $10,000." The statute goes on to provide that:

> "The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, . . ."

11 U.S.C. § 707(b)(2)(A)(ii)(I). Then, "the debtor's average monthly payments on account of secured debts shall be calculated" and factored in pursuant to section 707(b)(2)(A)(iii).

The Trustee's motion turns upon whether this debtor qualifies for a vehicle ownership expense as an "applicable" expense even though she owns her vehicle free and clear. If she does, the presumption of abuse does not arise in this case. If, however, the Trustee is correct and ownership expense is not allowed in the means test calculation, the presumption is triggered.

The earliest courts which considered this issue interpreted the statute to restrict the transportation ownership expense claim to only those debtors who were actually making payments

on their vehicles.  *In re Hardacre*, 338 B.R. 718 (Bankr.N.D.Tx. March 6, 2006); *In re McGuire*,

342 B.R. 608 (Bankr.W.D.Mo. June 1, 2006); *In re Barraza*, 346 B.R. 724 (Bankr.N.D.Tex. Aug.

1, 2006); *In re Wiggs*, 2006 WL 2246432 (Bankr.N.D.Ill Aug. 4, 2006); *In re Carlin*, 348 B.R. 795

(Bankr.D. Or. Aug. 18, 2006); *In re Oliver*, 350 B.R. 294 (Bankr.W.D.Tex. Aug. 8, 2006).   Then

another court entered the fray and articulated a totally different interpretation of the statutory

language consistent with Judge Eugene R. Wedoff's analysis in his article Means Testing in the New

§ 707(b), 79 Am. Bankr.L.J. 231.[1]  *In re Fowler*, 349 B.R. 414 (Bankr.D.Del. Sept. 11, 2006).  Since

then, it seems, most courts have been lining up behind that so-called minority opinion.  *In re*

*Hartwick*, 352 B.R. 867 (Bankr.D.Minn. Oct. 13, 2006); *In re Haley*, 2006 WL 2987947

(Bankr.D.N.H. Oct. 18, 2006); *In re Grunert*, 353 B.R. 591 (Bankr.E.D. Wis. Nov. 20, 2006); *In re*

*Prince*, 2006 WL 3501281 (Bankr.M.D.N.C. Nov. 30, 2006); *In re Wilson*, 2006 WL 3591266

(Bankr.D.Del. Dec. 11, 2006); *and see, In re Farrar-Johnson*, 353 B.R. 224 (Bankr.N.D.Ill. Sept.

15, 2006) (debtors were entitled to deduct standard housing expense although they lived in military

housing and had no "actual" housing expense).  The cases to date are quickly approaching an even

split.

Perhaps the most thorough discussion of the overall scheme of the means test is set forth by

Judge Wedoff in his article cited hereinabove.  He begins by considering the three types of expenses

defined by the statute:  National Standards, Local Standards and Other Necessary Expenses.  These

expenses are all defined by reference to "the applicable monthly amounts set forth in the Internal

---

[1]      Whether the context be a disposable income analysis under Chapter 13 or a
question of abuse in a Chapter 7, the interpretation of the means test is dramatically split.  Both
sides, ironically, rely upon the plain meaning of the statute, which might lead one to conclude
that the meaning of the statute is anything but plain.

Revenue Service Financial Analysis Handbook as Necessary Expenses under the National and Local

Standards categories and the debtor's actual monthly expenditures for items categorized as Other

Necessary Expenses."[2]  The Financial Analysis Handbook is part of the IRS's Internal Revenue

Manual ["IRM"].

The National Standards cover such things as food, housekeeping supplies, clothing, personal

care products, and miscellaneous items.  While allowances vary based on family size and income,

the standards are uniform throughout most of the United States.[3]   The IRM provides that the

National Standard is to be given to all taxpayers regardless of actual expenditures.  Therefore, the

full amount of the applicable National Standard is available to all debtors subject to the means test.

The Local Standards set allowances for two categories of expense:  transportation and

housing/utilities.  The IRM provides that "Unlike the national standards, the local standards for

housing, utilities, and transportation serve as a cap.  The taxpayer is allowed the local standard or

the amount actually paid, whichever is less."[4]  Turning then to the transportation allowance of the

Local Standards, the IRM sets out two components:  (1) ownership costs for one or two vehicles; and

(2) operating & public transportation costs, which includes monthly regional operating costs for up

to two vehicles or for public transportation costs.

Judge Wedoff concludes as follows:

> . . . because § 707(b)(2)(A)(ii)(I) provides that the debtor's allowed expense deductions
> "shall be" the "amounts specified" under the Local Standards – and because the statute
> makes no provision for reducing the specified amounts to the debtor's actual expenses – a

---

[2] H.R. Rep. No. 109-31 at 13-14 (2005).

[3] Alaska and Hawaii have higher allowances than the rest of the U.S.

[4] IRM Section 5.19.1.4.3 Paragraph 2.

plain reading of the statute would allow a deduction of the amounts listed in the Local Standards even where the debtor's actual expenses are less. Thus, as with the allowances of the National Standards, even if the debtor's transportation and housing needs were actually satisfied without cost to the debtor, § 707(b)(2)(A)(ii)(I) would allow the debtor a deduction in the amounts specified in the IRS's Local Standards.

Means Testing, 79 Am.Bank.L.J. at 256.

The discord between the two lines of cases is born out of the word "applicable". The first courts to consider the language of the statute construe the word "applicable" in deference to the IRM. *See, In re Hardacre*, 338 B.R. 718; *In re McGuire*, 342 B.R. 608. Under this rationale, since the IRS would not allow such a deduction, then such deduction is not "applicable" under §707(b)(2)(A)(ii)(I). Later, another court, hesitating to embrace the IRM, looked more closely at the plain meaning of the statute. It concluded that inclusion of the term "applicable" would be superfluous if the full National and Local Standard were allowed in every instance. Therefore that court, finding the language clear and unambiguous, surmised that "the term 'applicable' modifies the amounts specified to limit the expenses to only those that apply." *In re Wiggs*, 2006 WL 22246432, * 2. Noting that its interpretation did not lead to absurd results, it observed that in cases where the debtors have few (car) payments remaining or subsequently need to acquire a new vehicle, they can amend their plan as stated in *McGuire. Id.* at *3. Unfortunately, that option is not available in a Chapter 7 context.

All the courts which have struggled with this issue have employed well-tried principles of statutory construction. Because a provision that seems ambiguous in isolation may often be clarified by the remainder of the statutory scheme it may be necessary to consider such provision in relation to the overall scheme. *See, United Sav. Ass'n v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 371 (1988). Also, the plain meaning of a statute should be conclusive except where "the literal

application of a statute will produce a result demonstrably at odds with the intention of the drafters."
*United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989). Stated another way, the
interpretation should not lead to absurd results.

The *Hardacre* court acknowledged that Congress created the means test to "ensure that those
who can afford to repay some portion of their unsecured debts [be] required to do so." 151 CONG.
REC. S2470 (March 10, 2005). And certainly, the manner in which *Hardacre* interpreted the statute
had the effect of increasing the debtor's repayment of unsecured debt. Several months later,
however, the same court was asked to dismiss the petition of a debtor who was working 80 hours
per week at two jobs in order to support himself, pay child support, maintain the mortgage on the
home where his ex-wife and children resided, and was driving an 18-year old pickup truck. The
court, while acknowledging the debtor's modest lifestyle, was constrained to find that the language
of the statute (as it had been interpreted in *Hardacre*) made him undeserving of Chapter 7 relief. *In
re Barraza*, 346 B.R.724, 725. Conceding the seeming harsh result, the court noted that "[l]ike any
other effort at social or economic legislation, it is not perfect." 346 B.R. at 729.

Taking a fresh look at the statutory language, the *Fowler* court subsequently read yet another
meaning into the "plain" language of the statute. That court, and its progeny, interpret the word
"applicable" to simply refer to the number of vehicles owned as contrasted with the word "actual"
used elsewhere in the statute. That court noted that the "Local Standards" set, as objectively
reasonable, transportation Standards which include (1) "Ownership Costs" based only on the number
of cars owned by the taxpayer; and (2) "Operating Costs & Public Transportation Costs" which are
based on the number of cars owned by the taxpayer and on the taxpayer's location. *Fowler*, 349 B.R.
414, 416-417.

The fundamental difference between the so-called majority and minority positions, as set forth hereinabove, is that the majority looks beyond the amount specified by the IRS in its Financial Analysis Handbook to the language of the IRM as well as the IRS's Collection Financial Standards ["CFS"], both of which provide instructions for IRS field agents in analyzing a taxpayer's financial condition. The minority considers it to be inappropriate to rely upon the IRM and CFS instructions, not just because Congress nowhere authorized such instruction,[5] but because the Code and the IRS apply the Local Standards differently. The IRS uses the Local Standards as a cap on taxpayers' actual expenses, whereas section 707(b)(2)(A)(ii) uses them as fixed allowances. *See, Wilson*, 2006 WL 3591266 at *5-6. That court goes on to observe that its interpretation avoids potentially unfair results that may stem from the majority view:

> This approach reflects the reality that a car for which the debtor no longer makes payments may soon need to be replaced (so that the debtor will actually have ownership expenses), and it avoids arbitrary distinctions between debtors who have only a few car payments left at the time of their bankruptcy filing and those who finished making their car payments just before the filing.

*Id.* (citing *Fowler,* 349 B.R. at 419).

The minority view has focused instead on the precise language employed by Congress in establishing the means test formula, thus rejecting the import of the IRS instruction. Clearly, the word "applicable" is ambiguous when read in isolation. Reading the phrase in context with the remaining language of the statute, however, lends more insight into Congressional design. Congress, in a single sentence, drew a distinction between "applicable" expenses on one hand and "actual"

---

[5]    Section 707(b)(2)(A)(ii) provides that a debtor's allowable expense deduction is the "applicable ... *amounts specified* under ... Local Standards ...." It does not provide that a debtor's allowable expense deduction is determined by the applicable IRS instructions specified in the IRM and CFS. *Wilson,* 2006 WL3591266, at *6 (citing *Farrar-Johnson*, 2006 WL 2662709, at *5).

expenses on another.  It seems reasonable to conclude, therefore, that Congress intended "Other Necessary Expenses" to be debtor's "actual" expenses, and expenses under the Local Standards are those applicable to the debtor based upon matters particular to that debtor, e.g. number of cars, size of household, where he lives. Furthermore, BAPCPA elsewhere provides for consideration of actual average monthly payments on account of secured debt as part of the means test calculation in section 707(b)(2)(A)(iii).

The Court is satisfied that such an interpretation is consistent with the overall scheme intended by Congress.  Although the "presumption" of abuse is not so readily triggered, a debtor's chapter 7 case may still be dismissed if "the debtor filed the petition in bad faith . . . or . . . [if] the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse."  11 U.S.C. § 707(b)(3).  Thus, the Court finds that the debtor was entitled to claim the transportation ownership expense allowance although she had no monthly car payment and, as such, the presumption of abuse under section 707(b)(2) does not arise.  The Trustee's Motion to Dismiss under section 707(b)(2) should be, and accordingly is DENIED.

<u>Section 707(b)(3)</u>

The U.S. Trustee contends, as an alternative to dismissal under section 707(b)(2), that the case should be dismissed as an abuse under subsection (b)(3).  That Code section states:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall consider –
>
> (A)  whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

Unlike the previous section, the Trustee bears the burden under 707(b)(3) to demonstrate the debtor's bad faith or to show that the totality of the circumstances indicate abuse.

Section 707(b)(3), in contrast to the strict formulaic approach imposed by the means test, restores judicial discretion so that judges, in making a determination of abuse, may consider the actual financial situation of debtors that fall outside the means-test presumption.  See, Eugene R. Wedoff, Judicial Discretion to Find Abuse Under § 707(b)(3), 25 Am. Bankr. Inst. J. 1, 49 (April 2006).  In fact, according to Wedoff, if a debtor's actual disposable income is below the "abuse threshold"[6], there should be no finding of abuse based on debt-paying ability; if disposable income meets or exceeds the threshold, however, abuse should be found.  *Id.* at 52.

The court in *In re Nockerts*, 2006 WL 3689465 (Bankr.E.D.Wis. Dec. 14, 2006), observed that the "totality of the circumstances" test has its roots in pre-BAPCPA law,[7] and cited *In re Ontiveros*,198 B.R. 284 (C.D.Ill. 1996), wherein that court summarized the various approaches to the "substantial abuse" motions under the prior version of section 707(b):  (1) the *per se* rule of the Eight and Ninth Circuits under which dismissal was justified based on the debtor's ability to pay his debts alone; (2) the totality of the circumstances test of the Fourth Circuit which required a showing of more than just an ability to repay; and (3) the hybrid approach of the Sixth Circuit which allowed

---

[6]    The abuse threshold set out in § 707(b)(2)(A)(I) is irrebuttable.  Section 707(b)(2)(B) only allows a debtor to rebut the means test's calculation of disposable income in an amount above the abuse threshold; it does not allow any argument that the threshold itself is too low. Wedoff, Judicial Discretion, at p. 52.

[7]    Prior to BAPCPA's enactment, the former Bankruptcy Code section 707(b) granted a court authority to dismiss a case if granting relief would be a "substantial" abuse of the provisions of the law.  There was also a presumption in favor of granting the debtor bankruptcy relief.  BAPCPA not only lowered the standard by eliminating "substantial" from the statutory language, it also eliminated the presumption in favor of the debtor.

dismissal based on ability to pay alone, but gave the debtor the right to argue mitigating circumstances. *Id.* at 287.

This Court agrees that the means test of 707(b)(2) appears to be a codification of the old *per se* rule of the Eighth and Ninth Circuits which justifies dismissal based only on ability to repay as expressed above. Section 707(b)(3), on the other hand, specifically identifies the "totality of the circumstances" as the test for gauging abuse. As such, based upon a historical perspective, it would seem that 707(b)(3)'s "totality of the circumstances" test would likewise require a showing of something more than just ability to pay. Generally, however, the courts which employed the "totality of the circumstances" standard have held that, while the ability of a debtor to pay his debts alone is not substantial abuse *per se*, it can be regarded as the most important consideration in the analysis. *In re Lamanna*, 153 F.3d 1 (1ˢᵗ Cir. 1998); *In re Stewart*, 175 F.3d 796 (10ᵗʰ Cir. 1999); *and see, In re Kornfield*, 164 F.3d 778 (2d Cir. 1999).

The Fourth Circuit, in *In re Green*, 934 F.2d 568, 572 (4ᵗʰ Cir. 1991) noted that various factors, as well as the relation of future income to future expense, allow the court to more accurately identify abusive filing. Rejecting the notion that ability to repay debt alone justifies dismissal, the court states "in light of the statutory presumption that a debtor's Chapter 7 petition should be granted, solvency alone is not a sufficient basis for a finding that the debtor has in fact substantially abused the provisions of Chapter 7." *Id.*

A case substantially similar to the instant case is *In re Lenton*, 2006 WL 3850011 (Bankr.E.D.Pa. Dec. 15, 2006). That court held that "[i]n examining the Debtor's ability to pay his debts, the Court must consider his actual and anticipated financial situation over the applicable Chapter 13 commitment period, which the parties agree is five years." *Id.,* at *10. In that case, the

debtor was also repaying 401(k) loans which would be paid off within three years.  The court noted that if those amounts were subsequently dedicated to the repayment of unsecured debt over the remaining sixty month period, 57 % of the unsecured debt would be repaid.  At that point, the burden shifted to the debtor to show his entitlement to Chapter 7 relief.[8]

Turning then to the specifics of this case, the Court must consider the income that Daniels actually has available to pay nonpriority unsecured debt.  Daniels is divorced and has no dependents. She has been employed by the same employer for sixteen years.  Debtor's Schedule I indicates gross monthly income for Daniels of $4,845 and net monthly income of $3,681, which reflects voluntary contributions to her 401(k) retirement plan of $484.  Schedule J shows monthly expenses of $3,403, which includes a $521 loan repayment on Daniels' 401(k) plan.  Daniels listed $28,695 in unsecured debt on her Schedule F, which consists of a $19,100 repayment on a 401(k) loan, and remaining unsecured debt of $9,595.

Looking at Daniels' schedules, her calculation of monthly income, and her actual income and expenditures, this Court is satisfied that the Debtor has the ability to pay a significant portion of unsecured debt so as to establish abuse under section 707(b)(3).  Certainly, several additional factors may be pertinent in a 707(b)(3) analysis but are, in this case, unnecessary.

Based upon the foregoing, the Court does ORDER that the Trustee's Motion to Dismiss pursuant to 11 U.S.C. § 707(b)(3) is GRANTED and this case shall be dismissed pursuant to such section unless the Debtor converts the case to a proceeding under Chapter 13 within twenty (20) days

---

[8]  Another factual similarity between the cases is that the debtor in either case was in a position to likely need a replacement vehicle within the projected five year period.  Yet even accounting for that factor, the court found that the debtor had the ability to make substantial payments toward unsecured debt.

of the entry of this Order.

**IT IS SO ORDERED.**

# # #


Distribution:

 Joseph W. Chanda
UAW FORD LEGAL SERVICES PLAN
1939 Goldsmith Lane, Ste 117
Louisville, KY 40218-2006

Donald G. Henderson
1635 I Street
P. O. Box 909
Bedford, IN 47421-0909

Beth Kramer
Office of U.S. Trustee
101 West Ohio Street, Suite 1000
Indianapolis, IN 46204